[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 7145
These cases rise out of the taking by the defendant of the right to lay and operate a pipe line carrying sewage across land owned by the plaintiffs in Oxford.
Docket No. 28118 claims that the plaintiffs are aggrieved by the Statement of Compensation filed by the defendant concerning the taking.
Docket No. 28119 claims that the plaintiffs are aggrieved by the defendant taking rights outside those delineated in Docket No. 28118 for which the defendant has not offered any compensation.
The land in question is an abandoned railroad right of way running from Long Meadow Road to Towantic Hill Road. It is owned by the plaintiffs. The land to the east of the railroad right of way is zoned industrial, then to the west is zoned residential.
On October 18, 1988 the defendant filed a statement of compensation with the Clerk of the Superior Court in Waterbury concerning the taking.
First the defendant took a 30 foot wide permanent easement extending from Long Meadow Road southerly 2341 feet through the plaintiffs' land to Towantic Hill Road. This parcel contains 70,230 square feet of area or 1.612 acres.
Secondly, the defendant took a temporary construction easement area rectangular in shape 230 feet long and of varying widths at the southerly street line of Long Meadow Road. This parcel contains 21,953 square feet. This was exercisable until August 1, 1989.
The court heard testimony on the matters on October 26, 27 and 30, and on December 8, 1992. A view of the premises was taken on February 5, 1993.
Each party offered a real estate appraiser to testify as to the value of the property before and after the taking.
The plaintiffs' appraiser made his computation based on a value of lots into which the property could be subdivided. In fact no plan had been prepared for such a subdivision. Consequently, the court does not consider his approach of any help in deciding this matter. CT Page 7146
The defendant's appraiser made his computation based on a value per acre of the land involved. Part of the land was zoned industrial and part was zoned residential. He estimated the value of industrial land to be worth $10,000 an acre and residential land to be worth $5000 an acre. The defendant's appraiser stated in his report that the sanitary sewer easement is located within the residence zone. He had found that the plaintiffs owned 19.75 acre in the industrial zone and 48.75 acres in the residence zone.
Before the taking his computation was:
 19.75 industrial acres x $10,000 per acre = 197,500 46.75 residential acres x $5000 per acre = 234,000 ------- 431,000
After the taking, his computation was:
 19.75 industrial acres x $10,000 per acre = 197,500 46.75 acres — 1.612 residential acres = 45.138 acres 45.138 acres x $5000 = 225,690 $197,500 + 225,690 = 423,190 $431,000 — 423,190 = 7,810
$7,810 thus is the value of the easement for the sanitary sewer.
In order to help determine damages the plaintiffs offered in evidence two plans as to how their property could be subdivided. The defendant's taking effectively prevented part of such a plan. Part of the taking by the defendant reads
 "Furthermore, said owner (the appliants, Ernest Solberg and Sophie Solberg) and their successors in ownership of the above described premises shall have the right to construct roads or driveways across said thirty foot wide permanent easement area generally at right angles to the centerline of the above described sewer pipe, and to pass and repass on foot and in vehicles over and across said roads or driveways, subject to the foregoing rights of the Town of Oxford, acting herein by the Oxford Water Pollution Control Authority, provided that no such construction shall be commenced until twenty (20) days after said CT Page 7147 owner (the appliants Ernest Solberg and Sophie Solberg) or their successors in ownership of the above described premises shall have received from the Town of Oxford, acting herein by the Oxford Water Pollution Control Authority or its successors in ownership of the foregoing rights and easements, its written consent to a plan showing the location of such proposed construction, the existing grades, and the proposed grades which will result from construction, which written consent shall not be unreasonably withheld."
This states that the plaintiffs may cross over the pipe line easement only at right angles to the easement. They may not pass longitudinally along the easement. That ends all further consideration of Exhibit DD. And it also eliminates any access to the 6.2 acres in lot 11 and the 16.3 acres in lots 9 and 10 also Exhibit DD.
 Lot 11 has 6.2 acres at $5000 per acre = $31,000 Lots 9 10 have 12.9 acres at 10,000 per acre = 129,000 ------- 160,000
The temporary easement at the southerly street line of Long Meadow Road is 0.504 of an acre. That times $5000 is $2520. But the easement is for less than a year. 10% of the $2520 or $252 which would be a fair amount for that short lived easement.
Exhibit H shows that on the east side of the former railroad right of way, the plaintiffs' property abuts on the south land now or formerly of G. Hoffman and A. Delvecchio and on the north land now or formerly of H. and C. Schenck. The distance of the plaintiffs' property along the former railroad right of way is measured to be 760 feet. The land is all below the surface of the defendant's easement. Exhibit H also shows that the surface of the plaintiffs' land is at an elevation of 590 or 580 or 10 to 20 feet below the surface of the defendant's easement. The defendant's easement is 30 feet wide approximately in the center of the embankment. Thus a large part of the embankment is still owned by the plaintiffs and functions to support that part of the former right of way occupied by the defendant's sewer line. The embankment also extends beyond the former right of way into the plaintiffs' property part of which is measured to be 40 feet east of the edge CT Page 7148 of the former railroad right of way. 40 x 760 = 30,400 square feet or approximately 60% of an acre. This would be in the industrial zone where the defendant's appraiser valued the land at $10,000 an acre. 60% of 10,000 would be $6000. But this land is very valuable to the defendant because it is the support of its easement. The court feels that 5 times this amount or 30,000 should be a fair value for the property which the defendant has taken by so-called inverse condemnation.
In Docket No. 28118 judgment may enter for the plaintiffs to recover of the defendant: $7180 160,000 252 --- $167,432 plus interest and costs.
In Docket No. 028119, judgment may enter for the plaintiffs to recover of the defendant, $30,000 plus interest and costs.
THOMAS J. O'SULLIVAN, TRIAL REFEREE